## MUTUAL NONDISCLOSURE AGREEMENT

Aimia Proprietary Loyalty U.S. Inc. ("**Company**") and Goodbye Vanilla, LLC ("**Business**") as of this ___ day of August, 2014 ( the "Effective Date") intend to discuss the formation of a business relationship with each other, may form such a business relationship, and may participate in business activities during such business relationship (collectively, the "**Business Purpose**"). While pursuing the Business Purpose, each party (the "**Disclosing Party**") may disclose to the other (the "**Recipient**") certain proprietary and confidential information including without limitation the Disclosing Party's finances, research, development, business activities, products, services, or technical knowledge ("**Confidential Information**"). Confidential Information will also include any personally identifiable information provided by the Disclosing Party, including, without limitation, name, address, phone number, internet address or similar identifying designator associated with communication, or other personal information that could be utilized to identify an individual ("Personally Identifiable Information"). The term "Confidential Information" includes any modifications or derivatives prepared by the Recipient that contain or are based upon Confidential Information of the Disclosing Party. In connection with disclosure of such Confidential Information, the parties agree as follows:

**1.0   Limitation on Use; No Warranties.** Confidential Information of the Disclosing Party may be used by the Recipient only in connection with the Business Purpose. Confidential Information may not be copied, reproduced, or modified by the Recipient without the Disclosing Party's prior written consent. ALL WARRANTIES ARE DISCLAIMED, INCLUDING ANY WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF ANY CONFIDENTIAL INFORMATION. The Disclosing Party will have no liability related to the Recipient's use of the Confidential Information.

**2.0   Protection.** The Recipient will protect the confidentiality of the Disclosing Party's Confidential Information in the same manner it protects the confidentiality of its own proprietary and confidential information of like kind, but in no event will use less than a reasonable standard of care.

**3.0   Limitation on Disclosure.** The Recipient will not disclose the Confidential Information except to its employees and agents who need to know the Confidential Information in order to achieve the Business Purpose who are informed of the confidential nature of the information and bound by obligations of confidentiality consistent with this Agreement. The Recipient shall promptly report to the Disclosing Party any unauthorized disclosure or use of Confidential Information of which it becomes aware. The Recipient will be responsible for any breach of this Agreement by any of its employees or agents.

**4.0   Ownership; No License.** Confidential Information will at all times remain the property of the Disclosing Party. No license to any trade secrets, copyrights, or any other intellectual property is granted or implied by this Agreement or any disclosure of Confidential Information.

**5.0   Return.** Upon the first to occur of (i) termination or expiration of the Business Purpose or (ii) request by the Disclosing Party, the Recipient shall return to the Disclosing Party or destroy (at the Disclosing Party's discretion) all Confidential Information of the Disclosing Party. Notwithstanding anything to the contrary, each party may retain Confidential Information of the other party in accordance with its normal business practices (e.g., required by law, residing in archived backup tapes, or retained for audit purposes), subject to an ongoing obligation of confidentiality as required under this Agreement.

**6.0   Exceptions.** Confidential Information does not include information: (i) known to the Recipient prior to disclosure by the Disclosing Party; (ii) independently developed by Recipient, without reference to the Disclosing Party's Confidential Information; (iii) acquired by Recipient from a third party that was not, to Recipient's knowledge prohibited from disclosing the information; or (iv) that is or becomes publicly available through no breach by Recipient of this Agreement.

**7.0   Compelled Disclosures.** In the event Recipient receives a subpoena or other administrative or judicial process demanding Confidential Information of the Disclosing Party, the Recipient will promptly notify the Disclosing Party and tender to it the defense of such demand. Unless the demand is timely limited, quashed, extended, or stayed, the Recipient is entitled to comply with such demand (on the afternoon of the



EXHIBIT A

last day for compliance) to the extent required by law. If requested by the Disclosing Party, the Recipient will cooperate (at the expense of the Disclosing Party) in the defense of a demand. Nothing herein obligates any party to violate any state or federal securities laws or regulations regarding the disclosure of information.

    **8.0**     **No Commitment; Acknowledgement.** This Agreement does not constitute a commitment by either party to disclose any information or to acquire or provide any product, service, or asset. Nothing in this Agreement will create or imply any partnership or joint venture between the parties or be construed to render either party the agent of the other. Each party acknowledges that the other may already possess or offer products or services similar to those of the other party disclosed in the Confidential Information.

    **9.0**     **Securities Laws.** Each party hereby acknowledges that it is aware (and that its employees and agents who have been apprised of this Agreement and of the Business Purpose have been, or upon becoming so apprised will be, advised) of the restrictions imposed by federal and state securities laws on a person possessing material non-public information about the Disclosing Party. In this regard, if such securities laws are applicable, each party agrees that it will not purchase or sell any securities of the Disclosing Party, the parent company of the Disclosing Party, or any of the Disclosing Party's subsidiaries, or communicate such information to any third party, in violation of any such laws. Each party also agrees that, if requested by the other party, it will cause its employees and agents who have been or may become apprised of this Agreement and of the Business Purpose to give a written undertaking to the same effect to the other party.

    **11.0**     **Equitable Relief.** Recipient acknowledges that the Confidential Information has been developed by the Disclosing Party with substantial effort and at substantial cost, and therefore has value to the Disclosing Party. Breach by Recipient of this Agreement will cause the Disclosing Party irreparable injury for which no adequate remedy at law exists. Accordingly, the Disclosing Party has the right, in addition to all other rights it may have, and by executing this Agreement, Recipient hereby consents, to the entry in any court having jurisdiction of a temporary or permanent restraining order or injunction restraining or enjoining Recipient from any violation of this Agreement. In the event a party seeks injunctive or other equitable relief to enforce a provision of this Agreement, the parties will waive any requirement for the securing or posting of any bond in connection with such injunctive or other equitable relief.

    **12.0**     **Duration of Obligations.** This Agreement becomes effective on the first to occur of: (a) the date Confidential Information is first made available to the other party hereunder, or (b) the date upon which the last party executed this Agreement. Each party's obligations under this Agreement continue in full force and effect for a term of five (5) years from the Effective Date; provided, however, with regard to Personally Identifiable Information or computer source code exchanged by the parties relative to this Agreement, the Recipient's obligations under this Agreement will survive in perpetuity.

    **13.0**     **Affiliates.** For purposes of this Agreement, the term "Company" and "Business" shall include their respective corporate affiliates who are necessary to fulfill the Business Purpose, provided any such affiliates so used shall be bound by all of the terms and conditions applicable to the parties under this Agreement. The term "affiliate" shall mean all entities controlling, controlled by or under common control with Company or Business, as the case may be. The term "control" shall mean the ability to vote fifty percent (50%) or more of the voting securities of any entity or otherwise having the ability to direct the policies and direction of an entity.

    **14.0**     **Interpretation and Enforcement.** This Agreement will be governed by the laws of the State of Minnesota, without regard to its conflicts of laws principles. Each party specifically consents to jurisdiction in Minnesota in connection with any dispute between the parties arising out of this Agreement or pertaining to the subject matter hereof. Venue for any dispute between the parties arising out of this Agreement or pertaining to the subject matter hereof may be had in state or federal court situated in Hennepin County, Minnesota. This Agreement constitutes the entire understanding between the parties as to Confidential Information provided pursuant to this Agreement and may not be modified except in a written amendment signed by both parties. This Agreement is binding upon the parties and each of their respective successors and assigns. **EACH PARTY EXPRESSLY WAIVES ALL RIGHTS TO A TRIAL BY JURY.**

Agreed and Accepted:

Goodbye Vanilla, LLC
4828 W 35th St.
Minneapolis, MN 55416

By: _____
Name: _Drew Pearson_____
Title: _Managing Director___
Date: _8/8/14_____

Agreed and Accepted:

Aimia Proprietary Loyalty U.S. Inc.
1405 Xenium Lane North, Suite 150
Plymouth, MN 55441

By: _____
Name: _____
Title: _____
Date: _____

*[Signature Page 2014 NDA]*

3