UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Goodbye Vanilla, LLC, | Case No. 16-cv-0013 (WMW/SER) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT AIMIA INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| Aimia Proprietary Loyalty U.S. Inc., and Aimia Inc., | |
| Defendants. | |

This case arises from a business dispute between Plaintiff Goodbye Vanilla, LLC and Defendants Aimia Proprietary Loyalty U.S. ("Aimia U.S.") and Aimia Inc. regarding an alleged joint venture between the parties to create a customer loyalty program for Wheel of Fortune, a television show owned by Sony Pictures Entertainment. After Sony awarded a contract to create the program to Defendants, Goodbye Vanilla sued for various unfair competition violations, including a Lanham Act violation. Aimia Inc., the Canadian parent company of Aimia U.S., now moves the court to dismiss the case against it, alleging that the Court lacks personal jurisdiction over it. Because Goodbye Vanilla has not made a prima facie showing that the Court's exercise of jurisdiction would comport with due process, the Court grants Aimia Inc.'s motion to dismiss. *See* Fed. R. Civ. P. 12(b)(2).

## BACKGROUND

Defendants Aimia U.S. and Aimia Inc. are related companies that manage "customer loyalty" programs for their clients. According to the Complaint,[1] Defendants sought to submit a proposal to Sony, which was hiring a company to manage a customer loyalty program for its Wheel of Fortune television show. Defendants needed Goodbye Vanilla's help because of its "expertise in the entertainment, media, and television industries," so the parties entered into a joint venture to pursue the Sony contract. This joint venture eventually went awry, and Goodbye Vanilla sued.

Aimia Inc. is a Canadian corporation that owns and controls 100 percent of the voting stock of Aimia U.S. Aimia Inc. has no offices, business operations or bank accounts in Minnesota. It owns no property in Minnesota, nor does it use Aimia U.S.'s property. And Aimia Inc. is not registered to do business in Minnesota. By contrast, Aimia U.S. is a Delaware corporation. It is registered to do business in Minnesota and has offices in Minneapolis. The direct parent company of Aimia U.S. is Aimia Foreign Holdings UK Ltd. But its ultimate, indirect parent company is Aimia Inc. In 2015, Aimia U.S. had gross revenues of approximately $150 million, and it currently has approximately 650 employees. Aimia Inc. and Aimia U.S. have no corporate directors or officers in common.

Goodbye Vanilla alleges that Aimia Inc. controls Aimia U.S. Aimia Inc.'s 2014 Annual Report indicated that Aimia U.S. is a wholly owned subsidiary of Aimia Inc. The

---

[1] At this stage in the proceedings, the Court must resolve any factual disputes in Goodbye Vanilla's favor. *See Digi-Tel Holdings, Inc. v. Porteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

report defines the term "subsidiaries" as "entities over which [Aimia Inc.] has control" and indicates that "[s]ubsidiaries' accounting policies have been changed, when necessary, to align with the policies adopted by Aimia." Aimia Inc. and Aimia U.S. share the same website—www.aimia.com—and appear to use a common logo in marketing materials. Aimia U.S.'s Minneapolis office is listed as one of Aimia Inc.'s "Global Offices" on the shared website, and in May 2015, Aimia Inc. issued a press release (and updated its Facebook page) to announce that it had chosen downtown Minneapolis for its U.S. headquarters. On the same website, an "Aimia" executive is listed as overseeing, among other things, "the Channels and Events business across North America."

Goodbye Vanilla CEO Drew Pearson alleges that his encounters with Defendants demonstrate close ties between the two Aimia companies. He attended the parties' in-person pitch to Sony in Los Angeles, during which Aimia U.S. employees "boasted about their 'Smart Button' technology that would be used as a software solution for the Wheel of Fortune loyalty program." Pearson said the technology was "acquired and continues to be owned" by Aimia Inc., and Aimia Inc.'s press release says it purchased the technology as part of " 'Aimia's global growth strategy, strengthening its presence in the high potential U.S. retail loyalty market.' " According to Pearson, Aimia U.S. employees pitched certain Aimia Inc. products to Sony from Aimia Inc.'s product catalog as possible upsell items "as if they were their own."

Pearson also alleges that "Aimia U.S. executives are flown to Aimia Inc.'s headquarters in Canada for one to two weeks of training when they are first hired," and

that on at least one occasion while he worked with a vice president of Aimia U.S., the executive was "called away to Aimia Inc.'s headquarters in Canada on business."

## ANALYSIS

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a "plaintiff must make a prima facie showing that personal jurisdiction exists," which requires "pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation and alteration omitted). In its prima facie showing, the plaintiff is obliged to establish that "the exercise of personal jurisdiction comports with due process."[2] *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (quotation omitted). Although the evidentiary showing required at this stage is "minimal," it must be tested "by the affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotations and citations omitted). When the Court does not hold an evidentiary hearing on the motion, it views the evidence in the light most favorable to the plaintiff and resolves factual conflicts in the plaintiff's favor; but the party seeking to establish the court's jurisdiction

---

[2] This case is within the Court's diversity jurisdiction and federal-question jurisdiction. Because the federal statute in question, the Lanham Act, is silent as to service of process, the personal-jurisdiction analysis is the same under both types of subject-matter jurisdiction. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987) (holding that when a federal statute is silent as to service of process, the Court looks to the law of the forum state); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387-88 (8th Cir. 1991) (looking to the law of the forum state in a diversity case).

bears the burden of proof, which does not shift to the party challenging jurisdiction. *Fastpath, Inc.*, 760 F.3d at 820.

Both Goodbye Vanilla and Aimia Inc. agree that the only relevant inquiry here is whether the Court's exercise of personal jurisdiction over Aimia Inc. would comport with due process.[3] A court may assert general personal jurisdiction over a foreign corporation to hear any and all claims against it when the foreign corporation's affiliation with the forum state is so continuous and systematic as to render the foreign corporation essentially at home in the forum state.[4] *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Due process requires sufficient minimum contacts between the defendant and the forum state so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" requirement is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). A nonresident defendant's contacts with the forum state must be sufficient to

---

[3] The exercise of personal jurisdiction must also comply with Minnesota's long-arm statute. Here, the parties acknowledge that Minnesota's long-arm statute extends the personal jurisdiction of courts as far as due process allows, thus only the due process analysis is required. *See George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1062 (D. Minn. 2013)

[4] As Goodbye Vanilla concedes that it cannot establish a prima facie case that the Court has specific personal jurisdiction at this time, the Court will not address it. *See Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 832 (E.D. Mo. 2012) (only addressing claims of general personal jurisdiction when plaintiffs fail to allege specific personal jurisdiction).

CASE 0:16-cv-00013-WMW-SER Document 59 Filed 07/12/16 Page 6 of 12

cause the defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

When assessing general personal jurisdiction, the Eighth Circuit considers five factors to determine the sufficiency of a defendant's contacts: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts;[5] (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). The first three factors are the most important. *Id.*

I.  **Eighth Circuit Case Law on the Parent/Subsidiary Relationship**

The parties rely on three Eighth Circuit cases that address whether a court can exercise personal jurisdiction over the nonresident parent company of a local subsidiary. These cases establish two central principles to guide the Court here. First, for a court to have personal jurisdiction over the nonresident parent company based solely on the actions of its local subsidiary, the plaintiff must be able to show it could pierce the subsidiary's corporate veil by establishing that the local subsidiary is the "alter ego" of the nonresident parent company. *See Epps*, 327 F.3d at 649. Second, even without the ability to pierce the subsidiary's corporate veil, a court may be able to assert personal jurisdiction over a nonresident parent corporation based on the parent corporation's own actions in the forum state. *See Anderson v. Dassault Aviation*, 361 F.3d 449, 452-53 (8th

---

[5]  The third factor distinguishes between general and specific jurisdiction. *See Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998).

6

Cir. 2004). When considering the nonresident parent corporation's actions in the forum state, one factor to consider is whether the parent and subsidiary have a "close, synergistic" relationship that goes beyond "mere ownership." *Id.* at 453-54.

The first principle—the "alter ego" principle—comes from *Epps*. *See* 327 F.3d at 649. *Epps*'s "alter ego" principle refines the traditional five-factor "minimum contacts" test when the defendant is a nonresident parent corporation:

> In that situation, personal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego. If the resident subsidiary corporation is the alter ego of the nonresident corporate defendant, the subsidiary's contacts are those of the parent corporation[], and due process is satisfied. . . . [A] court's assertion of jurisdiction is contingent on the ability of the plaintiffs to pierce the corporate veil.

*Id.* at 649.

The second principle, which relies on a "close, synergistic" relationship, stems from the Eighth Circuit's opinion in *Anderson v. Dassault Aviation*, on which Goodbye Vanilla relies heavily. *See* 361 F.3d 449 (8th Cir. 2004). In *Anderson*, an injured flight attendant sued a French private jet manufacturer and the Arkansas subsidiary that customized and distributed the manufacturer's jets in the western hemisphere. *Id.* at 450-51. The French manufacturer, relying on *Epps*, asserted that the court lacked personal jurisdiction over it because the plaintiff could not pierce the corporate veil of its subsidiary. *Id.* at 452. But the Eighth Circuit rejected the manufacturer's assertion that a bright-line rule required the plaintiff to pierce the subsidiary's corporate veil for the

7

parent to be subject to the court's jurisdiction. *Id.* Instead, the Eighth Circuit determined that *Epps* was distinguishable because the French parent corporation had its own contacts with Arkansas that went "well beyond 'mere ownership' " of the subsidiary. *Id.*

The Eighth Circuit concluded that the parent company's "establishment of a distribution system in Arkansas, and marketing its products there, are matters that we may appropriately consider in determining whether the assertion of personal jurisdiction in Arkansas comports with due process." *Id.* Ultimately, the *Anderson* court held that the parent company had "sufficient contacts with Arkansas to support an Arkansas court's assertion of personal jurisdiction over it whether or not [the subsidiary] is its alter ego." *Id.* at 453. The court observed:

> Dassault Aviation [the foreign parent company] and Dassault Falcon Jet [the subsidiary] have a close, synergistic relationship that is not an abuse of the corporate organizational form, but is clearly relevant to the jurisdictional question. The majority of jets sold worldwide by Dassault Aviation fly in and out of Arkansas to be completed to the specifications of consumers as the Dassault Aviation Group's largest production site by Dassault Aviation's wholly owned subsidiary and exclusive distributor of business jets in the western hemisphere. We think that it is contrary to common sense to maintain that Dassault Aviation's nexus to the state of Arkansas is so minimal that it is not amenable to suit there.

*Id.*

The Eighth Circuit has cautioned against overreliance on *Anderson*, however. In *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KC*, the Eighth Circuit emphasized that "whether a foreign corporation has established minimum contacts with the forum state through pouring its products into regional distributors" should be kept "conceptually separate" from the question of "whether a subsidiary's contacts with the

forum state should be attributed to a foreign parent corporation through an agency theory."  646 F.3d 589, 596 (8th Cir. 2011) (internal quotation marks omitted) (citation omitted); *see also Arnold*, 874 F. Supp. 2d at 835 ("[T]he Eighth Circuit cautioned against the misapplication of [*Anderson*].").  *Viasystems* essentially clarified that the "close, synergistic" relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent, but instead is relevant in determining whether the parent has its own contacts with the forum state.  646 F.3d at 596.

## II.     General Personal Jurisdiction Over Aimia Inc.

Aimia Inc. urges the Court to conclude that general personal jurisdiction does not exist because Aimia Inc. itself has no direct contact with Minnesota.  It is a Canadian corporation that is not registered to do business in Minnesota, has no bank accounts in Minnesota, and has no personal or real property in Minnesota.  Furthermore, Aimia Inc. argues that Aimia U.S.'s contacts with Minnesota cannot be imputed to Aimia Inc. because Aimia U.S. is not its alter ego.  Citing *Anderson*, Goodbye Vanilla counters that it need not pierce Aimia U.S.'s corporate veil because Aimia Inc. and Aimia U.S. have a "close, synergistic relationship" that makes Aimia Inc. amenable to suit in Minnesota.

The Court holds that Goodbye Vanilla has not established a prima facie case that Aimia Inc. is subject to general personal jurisdiction in Minnesota.  Notably, Goodbye Vanilla does not argue that it would be able to pierce the corporate veil of Aimia Inc.'s U.S. subsidiary under *Epps*.  *See* 327 F.3d at 649.  Instead, it argues that under *Anderson*,

the Court has personal jurisdiction over Aimia Inc. because Aimia Inc. and Aimia U.S. have a "close, synergistic" relationship.

Goodbye Vanilla's reading of *Anderson* reduces the personal jurisdiction test to a single factor and ignores the factors the Eighth Circuit considers paramount in every personal jurisdiction case—the nature, quality, and quantity of a defendant's contacts *with the forum state*. *See id.* at 648. In *Anderson*, the Eighth Circuit explained that the "close, synergistic" relationship between the parent and its subsidiary was "clearly relevant" to the jurisdictional question. 361 F.3d at 453. But the *Anderson* court did not conclude that the "close, synergistic" relationship was determinative. *See id.* Instead, the court focused on how the parent company used this synergistic relationship to create its own "nexus to the state of Arkansas." *Id.* As the *Anderson* court observed, a majority of the parent company's jets sold worldwide flew in and out of Arkansas to be completed, its annual report listed its Arkansas site as its largest production site and the annual report touted that the parent's presence in the United States had been "especially significant in the state of Arkansas." *Id.*

By contrast, Goodbye Vanilla asserts Aimia Inc. has the following connections to Minnesota: Aimia Inc. owns 100 percent of the voting stock of Aimia U.S. (which has offices in Minneapolis), the companies' shared website lists Minneapolis as an Aimia "Global Office," and "Aimia" once issued a press release announcing that it had chosen Minneapolis as its U.S. headquarters. These contacts simply are not sufficient to establish general personal jurisdiction over Aimia Inc. and do not approach the deep connections the Eighth Circuit found in *Anderson* between the foreign parent and the

state of Arkansas. Nor are these contacts enough to establish that Aimia Inc. has affiliations with Minnesota that are so continuous and systematic as to render Aimia Inc. essentially at home in Minnesota. *See Daimler*, 134 S. Ct. at 757-58.

Goodbye Vanilla points to a variety of other factors that outline the relationship between Aimia Inc. and Aimia U.S. But the similarity of the two companies' names, their use of common marketing materials, their joint publication and dissemination of various written materials and Aimia Inc.'s alleged "complete control" of the subsidiary do not—on their own—create the requisite nexus between Aimia Inc. and Minnesota. *See Anderson*, 361 F.3d at 453 (holding that a "close, synergistic relationship" is "relevant" to the jurisdictional question, but not describing it as determinative).

Even though the plaintiff's burden is "minimal," it remains a burden. Due process requires that a nonresident defendant's contacts with the forum state must be sufficient to cause that defendant to "reasonably anticipate being haled into court there." *See World-Wide Volkswagen Corp.*, 444 U.S. at 297; *Epps*, 327 F.3d at 648. Goodbye Vanilla has not met that standard. The Court, therefore, grants Aimia Inc.'s motion to dismiss the case against it for lack of personal jurisdiction.[6]

---

[6] The Court denies as moot Aimia Inc.'s motion to dismiss for insufficient process. *See* Fed. R. Civ. P. 12(b)(4).

11

## ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Aimia Inc.'s motion to dismiss for lack of personal jurisdiction, (Dkt. 19), is **GRANTED.**

2. This action against Defendant Aimia Inc. is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 12, 2016　　　　　　　　　　　　　s/Wilhelmina M. Wright
　　　　　　　　　　　　　　　　　　　　　　　Wilhelmina M. Wright
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge